# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

TORIBIO FUENTEZ, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

BOULDER COMMUNITY HEALTH,

    Defendant.

## COMPLAINT

Through his attorney Paul Maxon, Plaintiff Toribio Fuentez brings this lawsuit for disability discrimination, race discrimination, retaliation, and violation of the Family and Medical Leave Act. His allegations are as follows:

### JURISDICTION AND VENUE

1. Plaintiff Toribio Fuentez is a resident of Colorado, and at all relevant times, he was a resident of this state. All actions complained of occurred within Colorado.

2. Defendant is a Colorado corporation that regularly conducts business within the State of Colorado.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, and this action is authorized and instituted pursuant to 29 U.S.C. § 626(c).

4. Venue is proper in this Court as the unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the District of Colorado.

## FACTUAL ALLEGATIONS

5. On January 4, 2005, Mr. Fuentez, a Hispanic man, was hired by Defendant to work as a groundskeeper in its Facilities Management department. In 2007 he was transferred to a Maintenance Mechanic position, where he worked until 2020 when Defendant terminated his employment.

6. During Mr. Martinez's 15 years of employment with Defendant, it repeatedly praised his work as "exceptional" (2006), "outstanding (2010), and "great" (2014)." For every one of those 15 years, he earned "meets" or "exceeds expectations" on his annual reviews, and received numerous raises.

7. Despite his strong performance, Defendant treated Mr. Martinez less favorably than his white co-workers: it assigned him to the night shift despite his seniority, ignored his repeated requests to be switched back to the day shift, denied his requests for HVAC training, and required that he use inferior, older vehicles. In one instance, a white co-worker passed gas on Mr. Martinez in front of supervisor Steve McHone, who simply laughed. In approximately 2019-2020, Mr. Fuentez complained to Mr. McHone about this discriminatory treatment, but prior to terminating Mr. Fuentez, Defendant never investigated his complaint or took any remedial action. Nor did Defendant ever discipline Mr. McHone.

8. In this discriminatory environment, Mr. Martinez's Hispanic coworkers' employment was typically short-lived, as they were either terminated or forced out. By the end of his employment, he was the only Hispanic working in Facilities Management.

9. Beginning in approximately January 2020, Mr. Martinez began experiencing health problems including weakness in his limbs and difficulty breathing. Thus, for the first half of the year he worked with a de facto lifting restriction. Despite this limitation, he was able to fulfill all of the essential functions of the Maintenance Mechanic position. This was in part due to the position's flexibility, which allowed him to leave some physically strenuous tasks for the day shifts, just as the day shifts would leave tasks for him. Additionally, Maintenance Mechanics assisted one another with physically strenuous tasks. Both practices were longstanding, and at no point during the first half of 2020 did Defendant ever indicate that his performance was unsatisfactory, or that he was failing to perform the position's essential functions.

10. In July 2020, Mr. Fuentez was diagnosed with inflammatory myopathy. Because he rarely called in sick, he had accumulated a sizable amount of paid time off ("PTO"), which he began at that time.

11. On August 12, 2020, Mr. Fuentez' doctor, Christine Stone, submitted FMLA paperwork to Defendant in support of intermittent leave from August 18 to September 18. Specifically, she recommended he work "light duty" four hours a week, five days a week. However, instead of providing intermittent leave, engaging in the interactive process, or accommodating him, Defendant's Leave Specialist Brittany Williams instructed Mr. Fuentez to have Dr. Stone revise the leave paperwork to request continuous FMLA leave—essentially forcing Mr. Fuentez out of his job.

12. Because Defendant refused to accommodate him, Mr. Fuentez started his full-time FMLA leave on August 13, 2020. During his leave, his strength improved, and on

October 5 he emailed Defendant's Leave Specialist Carly Wilson asking what he needed to do to return to work. He thereafter submitted Defendant's Return-to-Work Authorization in which Dr. Stone recommended that he work with a lifting restriction and reduced schedule. These restrictions were similar to those that Defendant had repeatedly accommodated for Mr. Fuentez's non-Hispanic coworkers, including but not limited to: Danny Lippincott, Rick Gustad, Daniel Shea, and Travis Beasley.

13. Although Defendant had accommodated non-Hispanic Maintenance Mechanics with restrictions similar to those Mr. Fuentez had, it refused to do so for him. Instead, his supervisor Steve McHone informed Defendant's Human Resources department that Mr. Fuentez could only return to work if he was "100%"— a requirement which Mr. McHone later admitted to the Colorado Civil Rights Division he had imposed on Mr. Fuentez.

14. On October 15, in response to Defendant's refusal to discuss accommodating him, Mr. Fuentez emailed Ms. Wilson and asked if there were "any other jobs [he] could do within [his] restrictions?" But despite his request, Mr. Fuentez's longstanding employment, and the fact that Defendant has approximately 2200 different positions, it never searched for any other open positions for him, or sought to reassign him to one.

15. On October 16, frustrated by Defendant's refusal to accommodate him, Mr. Fuentez emailed both Wilson and Williams to reiterate a prior complaint that he was being discriminated against because he was not one of the "good old boys," i.e., a white male. He also suggested that he believed Defendant's refusal to allow

him to return to work was in retaliation for him having complained of discrimination. However, in violation of its own written policies, Defendant never took any steps to address or investigate these allegations.

16. On November 5, 2020, Mr. Fuentez's FMLA leave ended, and on November 18 Ms. Wilson contacted him asking "when [his work] restrictions will be lifted?" On November 25, Mr. Fuentez provided Defendant with an updated Return to Work Authorization from his doctor, which included a 15 pound lifting restriction, prohibition on ladder use, and reduced hours that were to last through April 1, 2021—restrictions that Defendant had previously accommodated for other non-Hispanic employees in Mr. Fuentez's department. Nevertheless, Defendant never responded to this communication.

17. On December 9, 2020, Defendant posted Mr. Fuentez's previous job.

18. On December 11, 2020, Mr. Fuentez called Lisa Berlin, Defendant's HR Manager, to ask if there was any work available for him. However, instead of searching for positions for him, Ms. Berlin informed him that his department could not accommodate him with restrictions. When Mr. Fuentez pointed out that there were other people with similar restrictions who the department had accommodated, Ms. Berlin claimed that it was not possible for Mr. Fuentez to be accommodated because he worked alone on the night shift. When he reiterated his longstanding request to be transferred back to the day shift, she claimed that there were no day shift openings—even though he himself had originally been transferred from the day shift to accommodate another, non-Hispanic, employee.

19. On December 22, 2020, Julie Ammon, Defendant's HR Business Partner, wrote to Mr. Fuentez that he was being placed on General Medical Leave because he "had exhausted [his] FMLA leave…and [was] not able to return to work without restrictions."

20. On January 1, 2021, Defendant hired Chris Sundgren, a white male without disabilities, to replace Mr. Fuentez.

## FIRST CAUSE OF ACTION:
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF
## 42 U.S.C. § 1981

21. As a Hispanic person, Plaintiff is a member of a protected class.

22. Plaintiff engaged in protected activity by complaining about and opposing race discrimination.

23. As described above, Defendant took adverse actions against Plaintiff.

24. Defendant's adverse actions against Plaintiff were because his membership in a protected class and participation in protected activities.

25. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

26. Plaintiff was harmed by Defendant's actions.

## SECOND CAUSE OF ACTION:
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE
## 1964 CIVIL RIGHTS ACT
## 42 U.S.C. §§ 2000e *et seq.*

27. As a Hispanic male, Plaintiff was and is a member of several protected classes.

28. Plaintiff engaged in protected activity by complaining about and opposing discrimination.

29. As described above, Defendant took adverse actions against Plaintiff.

30. Defendant's adverse actions against Plaintiff were because his membership in protected classes and participation in protected activities.

31. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

32. Plaintiff was harmed by Defendant's actions.

**THIRD CAUSE OF ACTION:**
**RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT**
**C.R.S. 24-34-301, *et seq.***

33. As a Hispanic man, Plaintiff was and is a member of several protected classes.

34. Plaintiff engaged in protected activity by complaining about and opposing discrimination.

35. As described above, Defendant took adverse actions against Plaintiff.

36. Defendant's adverse actions against Plaintiff were because his membership in protected classes and participation in protected activities.

37. Defendant had no legitimate, non-discriminatory reasons for the adverse actions it took against Plaintiff.

38. Plaintiff was harmed by Defendant's actions.

**FOURTH CAUSE OF ACTION:**
**FAMILY AND MEDICAL LEAVE**
**THE FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. §§ 2601-2654; 29 U.S.C. § 2612(a)(1)**

39. As a person with myopathy, Plaintiff had a serious health condition, and was a qualified employee under the Family and Medical Leave Act.

40. Plaintiff availed himself of a right protected under the FMLA by requesting and taking medical leave.

41. In retaliation for his request for medical leave, Defendant subjected Plaintiff to adverse employment actions.

42. Defendant interfered with Plaintiff's medical leave.

43. Defendant discriminated against Plaintiff for taking medical leave and failed to reinstate him.

44. There was a causal connection between Plaintiff's exercise of his rights under the FMLA and Defendant's adverse actions.

45. Plaintiff has been injured as a result of Defendant's actions or lack thereof.

## **FIFTH CAUSE OF ACTION**
## **DISABILITY DISCRIMINATION**
## **THE AMERICANS WITH DISABILITES ACT**
## **42 U.S.C. §§ 12101,** *et seq.*

46. As a person with myopathy, Plaintiff has a disability as defined by law.

47. As demonstrated by his performance, Plaintiff was qualified for his position.

48. Plaintiff required reasonable accommodation in the form of medical leave, job restructuring, reinstatement and/or reassignment.

49. Defendant could have accommodated Plaintiff without undue hardship.

50. Defendant discriminated against Plaintiff by failing to accommodate him, terminating his employment, failing to reinstate him and failing to reassign him.

51. Defendant retaliated against Plaintiff.

52. Defendant illegally limited, segregated, and/or classified Plaintiff in a manner that adversely affected his job opportunities and status.

53. Defendant utilized standards, criteria, and methods of administration that had the effect of discriminating on the basis of disability and perpetuated the discrimination of others.

54. Defendant utilized qualification standards and selection criteria which screened out Plaintiff because of his disability.

55. Defendant's actions were in violation of the Americans with Disabilities Act.

56. Plaintiff was injured as a result of Defendant's actions.

**SIXTH CAUSE OF ACTION:**
**DISABILITY DISCRIMINATION AND RETALIATION IN VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT**
**C.R.S. 24-34-301, *et seq.***

57. As a person with myopathy, Plaintiff has a disability as defined by law.

58. As demonstrated by his performance, Plaintiff was qualified for his position.

59. Plaintiff required reasonable accommodation in the form of medical leave, job restructuring, reinstatement and/or reassignment.

60. Defendant could have accommodated Plaintiff without undue hardship.

61. Defendant discriminated against Plaintiff by failing to accommodate him, terminating his employment, failing to reinstate him and failing to reassign him.

62. Defendant retaliated against Plaintiff.

63. Defendant illegally limited, segregated, and/or classified Plaintiff in a manner that adversely affected his job opportunities and status.

64. Defendant utilized standards, criteria, and methods of administration that had the effect of discriminating on the basis of disability and perpetuated the discrimination of others.

65. Defendant utilized qualification standards and selection criteria which screened out Plaintiff because of his disability.

66. Defendant's actions were in violation of the Colorado Anti-Discrimination Act.

67. Plaintiff was injured as a result of Defendant's actions.

## **DEMAND FOR JUDGMENT**

Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award his all relief as allowed by law, including, but not limited to, the following:

a. Actual economic damages as established at trial;

b. Compensatory damages including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

c. Punitive damages;

d. Pre-judgment and post-judgment interest at the statutory rate;

e. Attorneys' fees, costs and expenses;

f. Declaratory relief; and

g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 15th day of July, 2022.

                                                s/ Paul Maxon
                                                Paul Maxon (Atty. Reg. # 37251)
                                                The Law Office of Paul Maxon, P.C.
                                                4450 Arapahoe Avenue
                                                Boulder, CO 80303
                                                Telephone: (303) 473-9999
                                                Fax: (303) 415-2500
                                                E-mail: paulmaxon@maxonlaw.com
                                                Attorney for Plaintiff